## MANDA v. ETIENNE.

(Supreme Court, Appellate Division, First Department. April 8, 1904.)

1. SALES—BREACH—WAIVER.
    After the making of a contract for the sale of flower bulbs, the seller informed the purchaser that the seller had been required to give security to perform his contract with the growers of the bulbs, and that the seller's bondsmen required the purchaser to give security to the seller. The purchaser refused to do so, because not required by the contract, and subsequently the seller withdrew the request, and made a shipment of bulbs without any security, and the purchaser refused to accept the goods, on the ground that the price stated in the invoice was incorrect. *Held* that, if the seller was guilty of a breach of the contract in refusing to perform unless security was given, the breach was waived.

**2. SAME—BREACH—WAIVER.**

Where the seller of goods failed to consign them to the broker who had been designated, and the purchaser refused to accept the goods on the ground that the price stated in the invoice was excessive, but made no objection as to the consignment, and offered to accept the drafts for the goods at a certain price, any breach of the contract because of consignment not having been made to the proper broker was waived.

**3. SAME—CONTRACT—CONSTRUCTION—QUESTION OF LAW.**

A seller of flower bulbs contracted with plaintiff to sell him such bulbs as he might require, at a specified sum per thousand less than the seller's competitors, on condition that the prices of competitors should be confirmed by their letters to plaintiff, and given in good faith and in accordance with the price at which the bulbs could be bought in the seller's locality. Thereafter plaintiff gave an order for a quantity of bulbs, and subsequently the seller sent various "approximate" lists of prices, changing as the season progressed, and plaintiff transmitted prices at which the seller's competitors were offering bulbs, calling attention to the fact that the prices were lower than the seller's, in reply to which the seller maintained that persons quoting such prices would be unable to deliver bulbs thereat, but finally the seller sent a printed price list, and subsequently shipped the goods at a price less than the printed list, which price was based on the market price of bulbs in the seller's region, less the deduction specified in the contract. *Held*, that the question whether the seller had performed his contract, or whether plaintiff was entitled to receive the bulbs at the price based on quotations sent to the seller, was a question of law for the court.

**4. SAME—CONTRACT OF SALE—BREACH.**

The seller was not guilty of any breach of the contract.

**5. SAME—ACTION—ACCEPTANCE OF GOODS.**

Where the purchaser of goods refused to accept the shipment thereof on the ground that the invoice price was above that specified in the contract, and he attached the goods shipped, but did not allege that the goods did not conform to the contract, or allege a tender of them back to defendant, and according to defendant's counterclaim and plaintiff's reply the delivery to and acceptance of the goods by the plaintiff after the attachment was made by defendant's consent and in fulfillment of the contract, defendant was entitled to recover on the theory of a delivery and acceptance pursuant to the contract.

Appeal from Trial Term.

Action by Albert A. Manda against Emilius Etienne. From a judgment in favor of defendant, and from orders denying the motions of the respective parties for a new trial, both parties appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Hector M. Hitchings, for plaintiff.
Henry W. Rudd, for defendant.

LAUGHLIN, J. The defendant recovered a verdict upon his counterclaim. Each party made a motion for a new trial, and both are dissatisfied with the judgment, and appeal. The plaintiff was engaged in the general horticultural business, including the importation of flower bulbs, at South Orange, N. J. The defendant was a resident of Ollioules, France, and was a dealer in flower bulbs at that place, purchasing the same from growers in the vicinity. The parties had no personal acquaintance, and had had no business relations

prior to the 15th day of October, 1895. On that day plaintiff wrote defendant, suggesting an arrangement by which he would become defendant's agent for the sale of flower bulbs in this country, or the buyer of bulbs from the defendant. The defendant replied, declining to employ plaintiff as an agent, but manifesting a willingness to sell bulbs to him. A contract accordingly was thereafter negotiated between the parties by letters and cablegrams. This correspondence resulted in a first shipment of bulbs by the defendant to the plaintiff on the 2d day of July, 1896. The first invoice was received by the plaintiff on the 14th day of July, but the bulbs did not arrive until the 25th day of the same month. Upon receiving the invoice the plaintiff refused to accept the drafts accompanying the same, upon the ground that the prices were in excess of the contract price, and upon no other ground. The goods were consigned through the defendant's agents in New York, instead of the brokers named in the contract; but the defendant at the time made no objection on this ground, and upon their arrival he demanded the bulbs, offering to accept the drafts at the price according to his understanding of the contract, which was refused. As soon as the plaintiff received the invoice, he wrote defendant, complaining of the price and requesting, in substance, that he cable the consignee to modify drafts and deliver at price as claimed by plaintiff. The defendant, upon receiving the plaintiff's protest against the invoice price, refused to modify the terms. Thereupon plaintiff employed counsel, who wrote defendant, threatening suit and complaining that the goods had not been consigned to the broker designated in the contract; but before the defendant received the letter, or had an opportunity to deliver the goods to the other broker, the plaintiff on the 28th day of July, 1896, brought this action for damages for breach of contract, and attached the first consignment of bulbs, and a second consignment, which had arrived in the meantime, delivery of which had been tendered and refused, in like manner as the first, on the 30th day of July. An order for service on the defendant by publication was obtained; but, the defendant having arrived in this country, personal service was made on him on the 20th day of August of the same year. Upon the trial, both parties claimed that the terms of the contract became a question of law for the decision of the court; but the court submitted the question to the jury as one of fact, and both parties excepted. The verdict is not in accordance with the claims of either party, and under the peculiar circumstances of this case it is impossible to ascertain from the verdict what the jury believed to be the contract. The principal question presented by the appeal is as to what was the contract between the parties as to the price of the bulbs, and whether the court erred in submitting the question to the jury as one of fact.

After further correspondence between the parties with reference to the terms of a contract, and after the defendant had submitted approximate prices of bulbs for the coming season, subject to change, however, until the crop was well advanced, which would be about February, the plaintiff wrote the defendant, submitting a proposed form of contract, and expressing the hope that the defendant would reduce the approximate prices later. Pursuant to the request of the

plaintiff in his letter of December 24th, and by cable on the 5th of January, 1896, the defendant on the 10th of January, 1896, cabled the plaintiff with reference to the acceptance of his proposed contract: "Accept, except for the offers of competitors. Letter following." The agreement proposed by the plaintiff provided that the prices at which the bulbs were to be invoiced were to be five or ten francs less per thousand than the prices at which bulbs were offered by any of defendant's competitors at Ollioules. On the 11th day of January, 1896, the defendant wrote the plaintiff, refusing to accept the provision of the contract making the price dependent upon the selling prices at which bulbs were offered by defendant's competitors, and stating at length his reasons for rejecting the proposition, which were, in substance, that the provision was liable to give rise to misunderstanding and to litigation, and the defendant suggested that this clause be changed to read that the defendant would sell the plaintiff bulbs at five francs per thousand less than his competitors, "on condition that the prices of my competitors are given to me by you, and confirmed by their own letters, which you will send me, and if these prices are given in good faith and in accordance with the prices at which the goods can be bought in this region, and it is optional for me to accept or refuse." The plaintiff, after receiving this cablegram and letter, cabled the defendant on January 24th, accepting the agreement as modified by defendant, and on the same day wrote confirming his cablegram, and also inclosed a schedule of prices which he suggested as defendant's selling price to him, but added that he would not dictate prices to the defendant.

At this stage of the negotiations, it is evident that the parties had merely come to an understanding by which the defendant was to sell all bulbs ordered by the plaintiff, so far as he could fill the orders, provided the prices at which the plaintiff claimed defendant's competitors were offering the same classes of bulbs were found by defendant to be in accordance with the market prices there at the time of shipment. This is the fair interpretation of his amendment to the contract as proposed by the plaintiff, in view of the fact that he distinctly notified the plaintiff that he desired the contract in that regard put in such form that it would not be open to any misunderstanding or litigation. On the 12th of March thereafter, the plaintiff wrote the defendant, inclosing his first order for bulbs "at the prices and conditions according to our arrangement and contract"; the same to be shipped in July. There had been considerable correspondence between the parties between the 24th of January and this time; but no change in the contract had been made, and the substance of the correspondence, so far as material, was inquiries on the part of the plaintiff as to the condition of the crop, and urging the defendant to fix a definite price, on account of the difficulty of contracting for the sale of bulbs here without the price being fixed, and on the part of the defendant that, owing to the drouth, the outlook for the crop was growing worse and worse, and a warning to the plaintiff against making contracts at fixed prices or for large-sized bulbs. Upon the 28th day of March, the defendant wrote the plaintiff, stating that he had booked the plaintiff's orders, upon con-

dition, however, that if he should be unable to deliver the specified amount of any particular sized bulbs, owing to their scarcity in the market, he should only be required to deliver so far as able to perform. The plaintiff acknowledged the receipt of this letter, and made no objection to the conditional acceptance of the order. Prior to the 28th day of March, 1896, the defendant had, at the instance of the plaintiff, sent the plaintiff different approximate price lists, changing as the season progressed and the shortage of the crop became more apparent. The plaintiff insisted upon having the defendant give fixed prices, and finally on the 28th day of March, with the letter acknowledging and booking plaintiff's order, the defendant inclosed a printed price list, making an express reservation against his inability to deliver the large sizes of Roman hyacinths in the quantity desired. This letter was acknowledged on April 27th by the plaintiff, who made no objection to the prices quoted, but requested further information as to the exact number of each size and variety of bulbs the defendant would be able to furnish, stated that he would send another order soon, and asked when the defendant intended shipping those already ordered. Between March 28th, when defendant inclosed the price list to the plaintiff, and the date and receipt of plaintiff's acknowledgment thereof, other correspondence occurred between the parties relating to the question of price, but it was occasioned by communications previously sent.

Prior to the 24th day of March, the correspondence between the parties indicated that they were proceeding upon the basis of the formal contract proposed by the plaintiff on December 24th, as modified at the instance of the defendant. The plaintiff had obtained and transmitted to the defendant prices at which the defendant's competitors were offering to sell various kinds of bulbs, and in that connection drew the attention of the defendant to the fact that those prices were in many instances lower than those quoted by the defendant to the plaintiff in his approximate price lists. The defendant did not assent to the prices of his competitors, transmitted to him by the plaintiff, but maintained the position that it would be impossible to sell at those prices, owing to the certainty that the crop would be short, and continually asserted that the prices would be higher, even, than his previous approximate quotations. He apparently became alarmed as to whether the plaintiff, in view of these circumstances, intended to let the order already given stand, or forward other orders, and asked the plaintiff, in substance, whether he could be relied upon to take bulbs from him. On the 24th day of March, the plaintiff wrote the defendant, confirming a cablegram in which he stated that the defendant could rely upon him, and that the order had been placed pursuant to the arrangement that he was to receive bulbs at five francs per thousand cheaper than any of defendant's competitors were selling for, and inclosed further quotations of defendant's competitors, calling attention to the fact that they were much lower in many instances than defendant's quotations. On the 5th day of April, the defendant, in acknowledging the receipt of this letter, admitted that the quotations of his competitors were lower than his own, but called attention to the fact that they did not bind them-

selves to deliver, and that they would be unable to deliver at the prices quoted, and referred plaintiff to his letter of the 28th of March, inclosing fixed prices, and assured the plaintiff that the condition of the crop justified his quotations. In this letter the defendant also advised the plaintiff to take orders as to quantities and sizes of bulbs conditionally, and pointed out the facts necessitating this course. On the 13th day of April, the defendant, in answer to an inquiry from the plaintiff on April 2d, inclosing further communications concerning prices, asking about the condition of the crop and the quantities defendant would be able to furnish, which was received by the defendant after his letter to the plaintiff of April 5th, advised plaintiff, in taking orders, to be cautious, both as to prices and as to sizes and quantities, and informed plaintiff that he had purchased 2,000,000 bulbs at the market price, to be established later, which he said would be higher.

On the 30th of April the defendant wrote plaintiff, calling attention to the fact that his letters of March 28th, April 5th, and April 13th had not been answered, and expressed the fear that the prices quoted terrified the plaintiff, and also stated that he had been required to give security to perform his contract with the growers, and that his bondsmen required that plaintiff give security to him. This the plaintiff refused to do, upon the ground that it was not required by the contract, and the defendant formally withdrew the request on the 2d of July; but prior thereto, and on or before the 18th of June, he cabled the plaintiff, upon receiving a cablegram from the plaintiff insisting upon holding him to the contract, having reference to defendant's requirement of security, that he would make a shipment, which evidently meant that he would do so without security. In the meantime the defendant wrote, on May 9th, that he hoped to make the first shipment the first week in July. On May 28th the plaintiff wrote the defendant to make shipments as soon as possible, and made no further suggestions concerning or reference to prices, or objections to the prices quoted in defendant's letter of March 28th. Nothing further occurred between the parties concerning the price until after the arrival of the first invoice, as already stated, with the exception that on the 26th day of May the defendant, in writing plaintiff, urging the giving of security, stated that the growers had begun to gather the bulbs, and that the prices would be fixed very soon.

If the defendant was guilty of a breach of contract in refusing to perform, unless the plaintiff would give security, this was waived, and is now of no importance. The same is true with reference to the consignment not having been made to the broker designated therefor.

The contention of the plaintiff is that he was entitled to have the bulbs invoiced at five francs less per thousand than the prices quoted early in the season by some of defendant's competitors and transmitted by plaintiff to defendant. It would seem, under the circumstances, that the price list forwarded to plaintiff by defendant on the 28th day of March was acquiesced in by the plaintiff, and that the prices of any bulbs shipped by defendant to the plaintiff were to be determined thereby. The defendant, however, appears to have treated this

price list as furnishing the maximum prices; and it may be that the fair construction of the contract, in the light of the subsequent correspondence, is that it was to be taken in connection with the formal contract, based on plaintiff's letter of December 24th as modified by defendant's reply, and to be considered merely an assurance or guaranty by the defendant to the plaintiff, for his guidance in taking orders in this country, that the prices to be fixed according to the contract would not in any event exceed the prices submitted on the 28th day of March. The price at which the defendant invoiced the two shipments of bulbs to the plaintiff was less than the prices quoted in the list inclosed on March 28th. The invoice price was evidently based on the market price at which bulbs of the same kind and size could be bought in the region of Ollioules at the time of shipment, less the francs and percentages specified in the contract. It appears that the defendant exercised the option, which he reserved in the contract of December 24th as modified, to fill the order, and the price which he claimed therefor was within the price at which the bulbs could be bought in the vicinity of Ollioules at that time. We are of opinion that the defendant acted within his contract rights in thus invoicing the bulbs, and that he was entitled to the price at which they were invoiced. The plaintiff, therefore, was at fault in declining to accept the bulbs on account of an alleged erroneous price; and the plaintiff, not the defendant, is the one who was guilty of a breach of the contract. This should have been decided as a question of law, and should not have been submitted to the jury.

The verdict for the defendant was $5,000. The first two consignments of bulbs, which were attached, were subsequently delivered to and accepted by the plaintiff. According to the allegations of defendant's counterclaim, this delivery was made by defendant's consent, after plaintiff's refusal to accept according to the contract, and after he had attached the goods and threatened to sell the same; and, according to plaintiff's reply, the delivery was made in fulfillment of the contract. The plaintiff did not allege that the bulbs did not conform to the contract, or a tender of them back to the defendant. In these circumstances, the defendant would be entitled to recover on the theory of a delivery and acceptance pursuant to the contract, for the plaintiff, having first wrongfully refused to perform the contract by accepting the bulbs at the contract price, and then having accepted them, was not at liberty to claim that the acceptance was otherwise than under the contract. The invoice price of these goods, together with the cost of packing, freight, and other charges, which the defendant paid, and which the plaintiff was obligated to pay, aggregated the sum of $19,666.04. The defendant also gave other evidence tending to show other damages in substantial amounts for the plaintiff's failure to accept and pay for the balance of the bulbs ordered and shipped pursuant to the contract. It thus appeared that on the undisputed evidence, according to the contract as we interpret it, the verdict in favor of the defendant was grossly inadequate.

The decision of the main question removes from the case many of the questions argued upon the appeal. The other questions that will necessarily arise upon the new trial are the ordinary questions

that arise on a breach of a contract to accept and pay for goods; and, inasmuch as the evidence upon a new trial may be different, it is neither necessary nor advisable that we should attempt to decide those questions in advance.

It follows, therefore, that the judgment and order should be reversed, both on the law and on the facts, and a new trial granted, with costs to defendant to abide the event. All concur.